UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

GLOTFELTY ET AL.                          CIVIL ACTION

VERSUS                                    NO: 11-2849

HART ET AL.                               SECTION: "J"(2)

**ORDER AND REASONS**

Before the Court are Defendants Craig Hart and Tammy Karas's
Motion to Dismiss (Rec. Doc. 8) and Plaintiff Brian Glotfelty's
opposition to same (Rec. Doc. 16).  Having considered the motion
and legal memoranda, the record, and the applicable law, the
Court is prepared to issue its ruling.

**PROCEDURAL HISTORY AND BACKGROUND FACTS**

Plaintiff Brian Glotfelty sues to recover damages resulting
from an arrest that he alleges unlawfully occurred and was
unlawfully sought and caused by the defendants.  Glotfelty
alleges that he did not receive due process when an attachment
for his arrest was issued and subsequently executed, in
connection with his appearance at a hearing on a motion for

1

contempt in a divorce proceeding in state court.  Glotfelty
alleges that as a result of his arrest and imprisonment, he
suffered damages, including mental, emotional, and physical pain
and suffering, and having to incur significant expenses to defend
against unlawful actions taken against him.

The instant proceeding arises from an underlying divorce
proceeding in state court that the parties characterize as
"acrimonious."  The alleged facts concerning that divorce
proceeding are related here as stated in Glotfelty's complaint.
Glotfelty was sought to be deposed in the divorce of Ryan Richard
("Richard") and Stacey Rebecca Smith Richard.  In his divorce
petition, Richard alleged that Glotfelty was Ms. Richard's
paramour.  Counsel for Richard caused to issue a number of
notices of deposition and subpoenas for the purpose of taking
Glotfelty's deposition in the divorce proceeding.  The first
deposition was scheduled for September 30, 2010; it was continued
by the parties' consent.  The second deposition was noticed for
October 27, 2010; the sheriff was allegedly unable to serve the
subpoena.  The third deposition was noticed for November 9, 2010;
Glotfelty did not attend.

A special process server filed an affidavit into the state
court record stating that he personally served Glotfelty with the

subpoena for notice of deposition on November 2, 2010.  No return on the subpoena is in the state court record.  Glotfelty denies he received service concerning this third deposition noticed for November 9, 2010.  The deposition notice is defaced, in that the address of Richard's previous counsel (who ended their representation of Richard in November) was scratched out and replaced with the address of Richard's new counsel—the instant movant defendants, Craig Hart and Tammy Karas ("Hart" and "Karas").  As already noted, the November 9 deposition date passed without Glotfelty attending.

Hart and Karas's next step was to file a motion for contempt concerning Glotfelty's failure to appear at the deposition. Vitally important to the instant proceeding, the motion for contempt requested that an attachment issue for Glotfelty, and that he be brought to court for the court's December 9, 2010 rule date.  The state judge ordered that the attachment issue and that Glotfelty be brought to court on December 9 to show cause why he should not be held in contempt of court.  Although the state court record contains a special process server's affidavit that the motion for contempt was served on Glotfelty, there is no return in the record, and Glotfelty denies that he was ever served with a copy of the motion itself.  Accepting this

allegation as true for the purpose of the instant motion to dismiss, although he knew of the December 9 rule date, Glotfelty had no knowledge that an attachment for his arrest had also issued.

Prior to the December 9 rule date, Hart and Karas issued a notice of deposition scheduled for December 2, 2010.  December 2 proved an eventful day:  the fourth scheduled deposition was set for that day; Glotfelty was served with notice of the deposition, subpoena, and the order regarding the motion for contempt; and counsel for the parties held a conference with a judge who quashed the notice of deposition and reset the deposition for December 16, 2010.  At the conference, the outstanding attachment for Glotfelty's arrest was not mentioned.  Glotfelty avers that he had no knowledge of the attachment for this reason, and for the additional reasons that he never received a copy of the motion for contempt itself[1] and the divorce proceeding was sealed at that time, such that Glotfelty and his lawyer could not view the record.  He further avers that Hart and Karas never advised his lawyer that an attachment for his arrest had issued.

---

[1] Glotfelty avers that although he was served with a notice to appear on December 9, 2010 to show cause why the relief requested in the motion for contempt should not be granted, the motion for contempt actually was not attached, and therefore he had no knowledge of the attachment.

4

On Saturday, December 4, 2010, five days before the scheduled contempt hearing, Glotfelty was arrested on the attachment.  He was handcuffed and fingerprinted but not charged with any crime.  He was released from prison after being held for what he claims was an "unreasonable lengthy period of time," after posting a $500 cash bond.  On December 9, 2010, a judge ordered that the order issuing the attachment be vacated. Glotfelty was finally deposed on December 16, 2010.  On February 16, 2011, the judge dismissed the outstanding rules with prejudice and vacated all attachments related to Glotfelty. Based upon these events concerning the attachment and arrest, Glotfelty filed his complaint in the instant proceeding on November 15, 2011, naming as defendants Richard; Richard's counsel, Hart and Karas (the instant movants); XYZ Insurance Company; John Doe; and Sheriff Jack Strain, Jr.  He brings his claims under Title 42 U.S.C. Sections 1983 and 1988; and in the alternative, under Louisiana tort law, alleging negligence, wrongful arrest, false imprisonment, and intentional infliction of emotional distress.  Hart and Karas filed the instant motion to dismiss, which is set for hearing as of March 14, 2012.

## THE PARTIES' ARGUMENTS

Hart and Karas argue that all claims against them should be dismissed.  First, they argue that the Section 1983 claims for federal civil rights violations fail as a matter of law.  They argue that there was no deprivation of a constitutional right because the alleged facts show that Glotfelty was not deprived of due process.  Hart and Karas aver that in filing the motion for contempt, they relied on the state court record, which indicated that Glotfelty was served with notice of the third deposition, and on the fact that Glotfelty failed to appear on November 9, 2010 for that deposition.  They further aver that Glotfelty was served with the motion for contempt *and* the signed order requesting an attachment.  Hart and Karas also argue that they did not act under color of state law, but rather acted as private attorneys.  They argue that private attorneys and their clients do not become state officials by employing the rules of state procedural law.  To the extent that Glotfelty asserts that Hart and Karas conspired with other state actors and/or acted with intent, Hart and Karas argue that the complaint's allegations are not specific.  Namely, the complaint does not allege that Hart and Karas knew or should have known that Glotfelty would be arrested on December 4, 2010, or that they conspired with the St.

Tammany Parish sheriff or any other state actor to deprive Glotfelty of due process.

Second, Hart and Karas argue that Glotfelty's tort claims fail as a matter of law, for several reasons.  First, they argue that they did not commit negligent or intentional acts because they followed the Louisiana Code of Civil Procedure in seeking a motion for contempt due to Glotfelty's failure to attend a deposition for which his attendance was compelled by subpoena. Second, and alternatively, Hart and Karas argue that they owed no duty to Glotfelty—who was their client's adversary—because they were prosecuting the divorce proceeding on behalf of their client, Richard.  Third, to the extent Glotfelty brings an intentional tort claim that can be characterized as a malicious prosecution claim, because the underlying suit was not decided in Glotfelty's favor, he does not state a claim in the instant matter.  Finally, Hart and Karas argue that there is no evidence that they acted with intent.

Glotfelty responds that he has stated a claim on which relief may be granted.  He argues that he has alleged that Hart was appointed a mayor's court judge, that Hart was previously employed by the St. Tammany Parish District Attorney's Office, and that Richard was a St. Tammany Parish Sheriff's Deputy.

7

Therefore, he argues, the defendants are state actors for purposes of his Section 1983 claim.  He argues that he has properly pled a conspiracy among state actors based on specific facts, namely, that the wrongfully issued ex-parte attachment was executed by the St. Tammany Parish Sheriff's Office ("STPSO") shortly after its issuance upon Glotfelty, who had no prior arrest record; it was executed on a Saturday morning; and Glotfelty was brought to jail despite the fact that the attachment stated that he was to be brought to court on December 9, 2010, which was five days after the actual date of arrest. Glotfelty argues that he has alleged sufficient facts to demonstrate that Hart and Karas were joint participants with each other, Richard, and the STPSO in intentionally and improperly requesting the issuance of an ex-parte attachment prior to the hearing on the motion for contempt.  As further evidence pertaining to the alleged conspiracy, Glotfelty points to the fact that the arrest occurred three days after the conference during which the judge had reset the deposition for December 16, 2010.

With respect to the allegations sounding in tort, Glotfelty argues that he has alleged sufficient facts to state a claim regarding Hart and Karas's negligent or intentional acts in

violating Louisiana law and Glotfelty's due process rights in obtaining an attachment without a hearing, in failing to disclose the existence of the attachment during the conference with the state judge on December 2, 2010, and causing and/or allowing Glotfelty to be arrested by the STPSO.  Glotfelty also clarifies that he has not sought to hold Hart or Karas liable for breach of a professional obligation.

## DISCUSSION

**A.  Legal Standard**

Under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests."  Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 346 (2005).  The allegations "must be simple, concise, and direct."  Fed. R. Civ. P. 8(d)(1).

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts "to state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, __U.S.__, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 547 (2007)).  A claim is facially plausible when the

9

plaintiff pleads facts that allow the court to "draw the
reasonable inference that the defendant is liable for the
misconduct alleged." Iqbal, 129 S. Ct. at 1949. A court must
accept all well-pleaded facts as true and must draw all
reasonable inferences in favor of the plaintiff. Lormand v. U.S.
Unwired, Inc., 565 F.3d 228, 232-33 (5th Cir. 2009); Baker v.
Putnal, 75 F.3d 190, 196 (5th Cir. 1996). The court is not,
however, bound to accept as true legal conclusions couched as
factual allegations. Iqbal, 129 S. Ct. at 1949-50.

**B.  Section 1983 Claims**

     For a plaintiff to state a claim under Title 42 U.S.C.
Section 1983, he "must allege the violation of a right secured by
the Constitution and laws of the United States, and must show
that the alleged deprivation was committed by a person acting
under color of state law." West v. Atkins, 487 U.S. 42, 48
(1988). To meet the "under color of state law" element, there
must be a showing of "some manner of state responsibility for the
acts that underlie" the claim. Auster Oil & Gas, Inc. v. Stream,
764 F.2d 381, 387 (5th Cir. 1985), cert. dismissed, 486 U.S. 1027
(1988), and cert. denied, 488 U.S. 848 (1988). When a Section
1983 action is brought against a state official, the requirement
that the plaintiff prove that the defendant acted under color of

10

state law is coextensive with the "state action" requirement of
the Fourteenth Amendment.  Lugar v. Edmondson Oil Co., Inc., 457
U.S. 922, 924, 929 (1982).  For a private actor to be held
liable, the actor's conduct must be "fairly attributable to the
State," in that "(1) [] the deprivation was caused by the
exercise of some right or privilege created by the state or by a
rule of conduct imposed by the state, or by a person for whom the
state is responsible, and (2) [] the party charged with the
deprivation may fairly be said to be a state actor."  Priester v.
Lowndes County, 354 F.3d 414, 423 (5th Cir. 2004), cert. denied,
543 U.S. 829 (2004).  This showing can be made with respect to a
private party's acts, if that party's "behavior makes her a
'willful participant in joint action with the State or its
agents.'"  Id.

   **1.  Defendants Hart and Karas**

     To the extent Glotfelty's claim is that Hart and Karas acted
under color of state law through the act of making an improper
request with the state court that an attachment issue, and that
it issue prior to the contempt hearing, Hart and Karas clearly
would not be state actors for purposes of Section 1983.
Invocation of state authority by a private person does not
automatically make that person a state actor under Section 1983.

Brummett v. Camble, 946 F.2d 1178, 1184 (5th Cir. 1991), cert.
denied, 504 U.S. 965 (1992).  That Hart and Karas, representing
their litigant client, purported to invoke legal authority
through the use of state law does not make their behavior
colorable under Section 1983, and a contrary finding would
suggest that every person who seeks redress through the courts
acts under the color of state law.  See Lugar, 457 U.S. at 937
("Without a limit such as [the state actor requirement], private
parties could face constitutional litigation whenever they seek
to rely on some state rule governing their interactions with the
community surrounding them.").  No matter how potentially
egregious the alleged procurement of the attachment was, the use
of the legal system by lawyers to achieve Glotfelty's arrest does
not make those lawyers state actors for purposes of Section 1983.
See Earnest v. Lowentritt, 690 F.2d 1198, 1200 (5th Cir. 1982)
("Within the context of individual dispute resolution, a private
party acts under color of state law only when there is corruption
of judicial power by the private litigant.").

     Glotfelty, however, does more than allege that Hart and
Karas are state actors due to their allegedly improper use of the
Louisiana Code of Civil Procedure to pursue a contempt motion and
attachment.  He alleges that Hart and Karas acted in connection

with the STPSO.  A private citizen may be held liable under Section 1983 where the plaintiff alleges "that the citizen conspired with or acted in concert with state actors."  <u>Priester</u>, 354 F.3d at 420.  For the plaintiff to bring such a suit alleging a conspiracy or action in concert with state actors, he must allege "(1) an agreement between the private and public defendants to commit an illegal act and (2) a deprivation of constitutional rights."  <u>Id.</u>  Importantly, conclusory allegations, without reference to specific facts, are insufficient.  <u>Id.</u>  Therefore, it is Glotfelty's burden to allege specific facts showing an unlawful agreement between Hart and Karas and the STPSO to commit an illegal act.

The mere involvement of the STPSO in arresting Glotfelty in accordance with the attachment sought by Hart and Karas does not make the attorneys state actors.  Rather, where a claimant alleges that the police acted at the request of private parties, the Fifth Circuit has stated that the claimant must prove a "preconceived plan":

> The execution by a private party of a sworn complaint, which forms the basis for an arrest, is, without more, not sufficient to make that party's acts state action. The plaintiff must show that the police in effecting the arrest acted in accordance with a "preconceived plan" to arrest a person merely because he was designated for arrest by the private party, without independent investigation.

13

Sims v. Jefferson Downs Racing Ass'n, Inc., 778 F.2d 1068, 1078-79 (5th Cir. 1985).  The Fifth Circuit in Sims cited to a line of cases concerning how the involvement of police officers may transform a private actor's conduct into state action.  See id. (citing, e.g., Hernandez v. Schwegmann Bros. Giant Supermarkets, Inc., 673 F.2d 771 (5th Cir. 1982) (holding that grocery store was not a state actor where its security officers called the police concerning suspicion that plaintiff was shoplifting, because plaintiff had proven no "customary" or "pre-existing" arrangement between the grocery store and the police for detaining suspected shoplifters); White v. Scrivner Corp., 594 F.2d 140 (5th Cir. 1979) (reaching the same conclusion where the police had a policy of conducting independent investigations before making arrests for shoplifting); Duriso v. K-Mart No. 4195, Division of S. S. Kresge Co., 559 F.2d 1274 (5th Cir. 1977) (finding that where the evidence was sufficient for the jury to conclude that a customary plan existed between the store and the police regarding shoplifters, the jury properly found that the "under color of state law" requirement was fulfilled); Smith v. Brookshire Bros., Inc., 519 F.2d 93 (5th Cir. 1975), cert. denied, 424 U.S. 915 (1976) (holding not clearly erroneous the district court's finding that a plan existed for police officers

to take alleged shoplifters into custody, such that the store was
an actor under color of law)).  Therefore, to convert Hart and
Karas's use of the legal system from private action to state
action, based upon an alleged connection with Richard's (who
allegedly had a law enforcement connection) and/or the STPSO's
use of state authority in making the arrest, Glotfelty must
allege facts constituting a plan between law enforcement and the
attorneys to arrest Glotfelty merely because he was designated
for arrest by Hart and Karas.

In his complaint, Glotfelty alleges the following:

                              XXIX.
      On information and belief, due to the close
connection of HART and/or RICHARD to law enforcement,
specifically, the St. Tammany Parish Sheriff's Office,
and despite the fact that in excess of 46,492 warrants
were waiting to be served which included 28,733 arrest
warrants for failure to appear and contempt of court
were unserved in St. Tammany Parish, it seems more than
coincidental that the wrongfully issued ex-parte
attachment was executed by the STPSO through DOE
shortly after its issuance and GLOTFELTY, who had no
prior record nor any arrests, was arrested from his
home on a Saturday morning and brought to jail despite
the fact that the attachment stated that he was to be
brought to Court on December 9, 2010.

Rec. Doc. 1, at 12, ¶ XXIX (footnote omitted).  Reasonably and
liberally construed, this averment is that based on an
amalgamation of circumstances, there must have been some sort of
agreement or knowledge amongst the defendants and/or the STPSO to

arrest Glotfelty.  Glotfelty appears to imply that law enforcement in some way was in league with Hart and/or Richard to execute an attachment shortly after its issuance, at an odd time of the day and week, when the STPSO had more important matters to attend to, and in contravention of the attachment's statement that Glotfelty was to be brought to court on the later date of the contempt hearing.  There is no allegation, as required under Sims, of a preconceived plan between Hart and Karas and the police to have Glotfelty arrested in contravention of applicable law.  Furthermore, Glotfelty alleges that a judge ordered that the attachment issue; this is inconsistent with any allegation that the police planned with Hart and Karas to make the arrest merely because Hart and Karas sought to have Glotfelty arrested.

To the extent Glotfelty is asserting that Hart, Karas, and law enforcement reached an understanding or agreement that Glotfelty would be arrested on December 4, 2010, instead of the alleged proper date of December 9, these factual allegations are insufficient to raise Glotfelty's right to relief above the speculative level, as is required under Twombly, 550 U.S. at 555. Glotfelty states that "it seems more than coincidental" that this arrest occurred in the time and manner it did, but this is exactly the factually-barren sort of allegation with which the

16

Supreme Court was concerned in <u>Twombly</u> and <u>Iqbal</u>.  In <u>Twombly</u>,
the Supreme Court held that in the context of proof of a contract
or conspiracy in restraint of trade under Section 1 of the
Sherman Act, the claim "requires a complaint with enough factual
matter (taken as true) to suggest that an agreement was made."
<u>Id.</u> at 556.  Moreover, "a conclusory allegation of agreement at
some unidentified point does not supply facts adequate to show
illegality."  <u>Id.</u> at 557.  In <u>Iqbal</u>, 129 S. Ct. at 1949, the
Supreme Court expounded that a claim is facially plausible and
thus well-pleaded "when the plaintiff pleads factual content that
allows the court to draw the reasonable inference that the
defendant is liable for the misconduct alleged."

     The facts alleged are that Hart and Richard were closely
connected with law enforcement, thousands of arrest warrants were
unserved in St. Tammany Parish on the date in question, the
attachment was executed shortly after its issuance, Glotfelty had
no prior arrests, the arrest occurred on a Saturday morning, and
the arrest occurred several days earlier than it should have.
Rec. Doc. 1, at 12, ¶ XXIX.  These facts do not permit the Court
to draw a reasonable inference that an agreement to improperly
execute the attachment existed.  These facts may be *consistent
with* an agreement:  the arrest of someone with a clean record

17

earlier than usual or prior to what is contemplated by the language of the attachment order, against the background of an alleged backlog or queue of arrest warrants in the sheriff's jurisdiction, would *support* a finding of an agreement between the attorneys who sought the attachment and law enforcement to promptly execute the attachment.  However, pleaded facts "merely consistent" with liability do not make a claim plausible.  <u>Iqbal</u>, 129 S. Ct. at 1949.  Based on these bare circumstances, the Court cannot reasonably infer that an agreement existed.  Drawing such an "inference" would be more akin to an acknowledgment of the logical possibility that an agreement may have existed, which does not pass the plausibility requirement imposed by Federal Rule of Civil Procedure 8(a).[2]

Glotfelty states in his opposition memorandum that he has alleged that Hart, Karas, Richard, and the STPSO conspired together to effect Glotfelty's unlawful arrest based upon the illegal attachment.  It is notable that Glotfelty does not cite to any portion of his complaint that uses the word "conspiracy," and the Court cannot find any such instance.  A conspiracy under Section 1983 has been described as "an agreement between private

---

[2] "A pleading that states a claim for relief must contain . . . a short and plain statement of the claim *showing* that the pleader is entitled to relief."  FED. R. CIV. P. 8(a) (emphasis added).

and public actors to violate the plaintiff's constitutional rights.  A conspiracy may be proven by circumstantial evidence; however, the acts of the alleged conspirators must show a 'unity of purpose, common design, and understanding, or meeting of the minds in an unlawful arrangement.'"  <u>Bayou Fleet, Inc. v. Alexander</u>, 68 F. Supp. 2d 734, 745 (E.D. La. 1999), <u>aff'd</u>, 234 F.3d 852 (5th Cir. 2000) (internal citations omitted).  Nowhere in the complaint does Glotfelty state that Hart and Karas reached an agreement with Richard acting in the role of a sheriff's deputy, or more generally with the STPSO, to improperly execute the attachment.  As stated in <u>Priester</u>, 354 F.3d at 420, conclusory allegations of an unlawful agreement will not suffice. <u>See also Hale v. Harney</u>, 786 F.2d 688, 690 (5th Cir. 1986) ("'Mere conclusory allegations of conspiracy cannot, absent reference to material facts,' state a substantial claim of federal conspiracy under 42 U.S.C.A. § 1983.").

Furthermore, the allegations that certain of the private defendants have some connection to the State is insufficient to deem them state actors.  Glotfelty asserts that Richard was a St. Tammany Parish Sheriff's deputy and that Hart was an appointed judge of a mayor's court.  Rec. Doc. 1, at 3, ¶ IV; at 11, ¶ XXVIII.  However, Glotfelty does not assert any specific facts

19

indicating that these defendants in any way used these alleged public positions to deprive Glotfelty of any constitutional right or that the public positions made it any easier for the alleged constitutional deprivation to occur.[3]   Glotfelty merely alleges that Hart and Karas improperly used the legal system to seek an attachment.   That Hart was a judge and Hart and Karas's client, Richard, had some connection with the STPSO does not turn Hart and Karas's resort to legal process into state action.   See Phillips v. Rockefeller, 321 F. Supp. 516, 521 (S.D.N.Y. 1970), aff'd, 435 F.2d 976 (2d Cir. 1970) ("It is not defendants' status as state officials that is determinative, it is the nature of the acts performed by them.").   Additionally, Glotfelty's allegation that Hart was previously employed by the St. Tammany Parish District Attorney's Office, Rec. Doc. 1, at 12, ¶ XXVIII, is insufficient to state a Section 1983 claim against Hart, because there is no allegation that Hart was so employed at the time of the events in question.

---

[3] Glotfelty alleges that the defendants had the "overt, significant assistance of State and Parish Officials and government."   Rec. Doc. 1, at 12, ¶ XXX.   Even to the extent this allegation refers to Hart's position as a judge or Richard's position with the sheriff's office, there are no specific facts indicating that the alleged public positions facilitated the alleged constitutional deprivation.   Rather, based on the state judge's order of attachment, law enforcement could have executed the attachment without any help from Hart or Richard.   Perhaps it would be a different story if the complaint alleged that Hart and Richard used their alleged positions to facilitate an early arrest, but there is no allegation of such in the above-quoted language in the complaint.

Glotfelty has not stated a plausible claim that Hart and
Karas acted under color of state law, and thus he has not pled a
claim against them arising under Section 1983.  The Court finds
the case of <u>Ballard v. Wall</u>, 413 F.3d 510 (5th Cir. 2005), which
Glotfelty cites, distinguishable.  There, the plaintiff had
alleged an agreement among a judge and attorneys to keep the
plaintiff in jail until he paid a debt.  Although the court
therein found that the plaintiff pled sufficient facts to
demonstrate a conspiracy, those facts included a specific
communication between an attorney and the judge.  <u>Id.</u> at 519.  In
the instant case, Glotfelty pleads insufficient facts to
establish joint participation by the attorneys and law
enforcement to deprive Glotfelty of constitutional rights.  The
Section 1983 claims against Hart and Karas must be dismissed.

   **2.  Remaining Defendants**

The same rationale that applies to the dismissal of the
Section 1983 claims against Hart and Karas applies to defendant
Richard.  Any encouragement of his attorneys by Richard to use
state procedural law to seek a contempt order and attachment does
not make Richard a state actor under Section 1983.  Just as no
plausible allegation of joint participation by Hart and Karas
with law enforcement is made in the complaint, no plausible

21

allegation of joint participation exists with respect to Hart and
Karas's client, Richard.  Also, as previously noted, the bare
allegation that Richard had some connection with the State,
perhaps as a sheriff's deputy, fails to plausibly allege that
Richard used state authority to perpetrate any constitutional
deprivation upon Glotfelty.

Moreover, the Court finds that Glotfelty's allegations with
respect to Sheriff Jack Strain and the arresting officer, "John
Doe," also fail to meet the plausibility standard imposed by
Federal Rule 8(a).  The complaint alleges that Strain is
vicariously liable for any acts and/or omissions by employees of
the STPSO in the course and scope of their employment, including
Doe during his arrest of Glotfelty.  Rec. Doc. 1, at 10, ¶¶ XXII-
XXIII.  The complaint avers that Glotfelty's arrest by Doe was
"improper, lacked probable cause, or any legal basis, and was in
violation of" Glotfelty's constitutional rights and Louisiana
law.  Id. at 14, ¶ XXXIV.  It alleges that Strain is answerable
for actions of the STPSO, including Doe, in having the attachment
incorrectly enforced.  Id. at 15, ¶ XXXVI.  It avers that Strain
is liable under a theory of *respondeat superior*; is responsible
for the insufficient hiring, training, supervision, discipline,
and control of deputies under his command, including Doe; and is

responsible for the inadequate training of deputies and improper policies and procedures of the STPSO that allowed Glotfelty's unlawful arrest and imprisonment, when the attachment required that Glotfelty be brought to court.  <u>Id.</u> at 15-16, ¶¶ XXXVI-XXXVIII.  These allegations do not state a federal claim for relief against either "Doe" or Strain.

Fictitiously named "John Doe" in the complaint, the arresting officer is not a party to this action.  <u>See</u> <u>Nagle v. Lee</u>, 807 F.2d 435, 440 (5th Cir. 1987) (stating that "the mere naming of a person through use of a fictitious name does not make that person a party absent voluntary appearance or proper service of process").  To the extent Glotfelty avers that Strain is liable under Section 1983 under a theory of *respondeat superior*, this theory is invalid under Section 1983.  <u>See</u> <u>Monell v. Dep't of Social Servs. of City of N.Y.</u>, 436 U.S. 658, 694 (holding that "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents"); Rec. Doc. 1, at 2, ¶ I (naming Strain as a defendant in his official capacity as sheriff); <u>Kentucky v. Graham</u>, 473 U.S. 159, 165-66 (1985) (where suit is against government official in his official capacity, the suit is, in all respects other than name, treated as a suit against the government entity).  To the extent Glotfelty asserts

23

in the complaint that Strain improperly trained, supervised, disciplined, or controlled police officers in St. Tammany Parish and/or instituted improper policies and procedures, these allegations are too vague to survive a motion to dismiss, and amount to no more than an "unadorned, the-defendant-unlawfully-harmed-me accusation," which fails under Iqbal, 556 U.S. at 678.  Therefore, the Section 1983 claims against "Doe," Richard, and Sheriff Strain must be dismissed.

A district court may decline to exercise supplemental jurisdiction where it has dismissed all other claims over which it had original jurisdiction.  Priester, 354 F.3d at 425 (citing 28 U.S.C. § 1367(c)(3)).  In this case, there is no diversity jurisdiction because Glotfelty and the defendants are domiciled in Louisiana.  See Rec. Doc. 1, at 1-2, ¶ I.  The Court has dismissed the Section 1983 claims, the only claims over which the Court had original jurisdiction.  Furthermore, the fact that this case has not proceeded beyond the motion-to-dismiss stage militates in favor of the Court declining to exercise supplemental jurisdiction.  See Harrison v. Jones, Walker, Waechter, Poitevent, Carrere & Denegre, L.L.P., 2005 WL 517342, at *6 (E.D. La. Feb. 24, 2005) (where court had not addressed the merits of plaintiffs' state law claims and discovery that had

24

been done could be used in state court, the court declined to exercise supplemental jurisdiction).  Accordingly, all state law claims will be dismissed without prejudice.


### CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Defendants Craig Hart and Tammy Karas's Motion to Dismiss (Rec. Doc. 8) is **GRANTED IN PART,** insofar as Brian Glotfelty's Section 1983 claims against Hart and Karas are **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that Glotfelty's Section 1983 claims against all other defendants in this matter are **DISMISSED WITH PREJUDICE**, and that all state law claims in this case are **DISMISSED WITHOUT PREJUDICE.**

New Orleans, Louisiana, this 11th day of April, 2012.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE

25